CASE 64—PETITION ORDINARY—DECEMBER 8.

# Louisville School Board v. Superintendent of Public Instruction.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. APPORTIONMENT OF SCHOOL FUNDS—STATUTORY CONSTRUCTION.— Under the provision of section 2974 of the Kentucky Statutes (being a part of the charter for cities of the first class) the school board in cities of the first class stands in the place of a county superintendent of schools with reference to the returns which said superintendents are required to make as to the number of school children in each district under the provisions of section 4375 of the Kentucky Statutes.

2. SCHOOL CENSUS—RETURNS—STATUTORY CONSTRUCTION.—Under the provisions of section 2974, a census of the children of school age is required to be taken at least once every five years, and in such years a return of the census must be made to the Superintendent of Public Instruction; but for the years in which no actual census is taken, it is sufficient if the board makes the certificate to the superintendent of the number of children of school age as shown by the last census with such an increase as has been ascertained in the manner prescribed by the statute; since the provisions of section 4449 of the statutes requiring trustees to certify to the superintendent the name, age, sex, etc. of the children of school age does not apply to cities of the first class.

3. CONSTITUTIONAL CONSTRUCTION.—The provision of section 186 of the Kentucky Constitution that "each county in the Common wealth shall be entitled to its proportion of the school fund on its census of pupil children for each school year," does not require an actual census every year of the school children as a condition precedent to the right of a county or school district to receive its proportion of the school fund; the chief purpose in view in that section was to declare each county entitled annually to a share of the funds in proportion to the number of pupil children living therein, and the manner of ascertaining that number was not the subject matter in view.

4. CONSTITUTIONAL LAW.—Legislation is not to be regarded as special merely because it in fact applies to only one city in a State, that city being the only one of its class.

5. CONSTITUTIONAL CONSTRUCTION.—When there has been an addi-

tion of territory to the city since the former school census the consequent increase of children is not to be taken into account in fixing the ratio of natural increase as prescribed by the statute.

6. ESTOPPEL.—The Superintendent of Public Instruction is not estopped to question the accuracy of a school census by the fact that one distribution of the school fund has been made based upon such census.

R. H. BLAIN FOR APPELLANT.

W. S. TAYLOR FOR APPELLEES.

(Briefs withdrawn from record.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The chancellor granted the mandamus sought in this case by the appellant, the Louisville School Board, against the superintendent of public instruction, but limited the relief sought by directing the superintendent to apportion and estimate the board's share of the school fund to an enumeration of children of pupil age less by some ten thousand than is claimed by the board. Of this the board complains, and to the order granting the mandamus, or affording the board any relief at all, the superintendent complains. It is argued for the superintendent, in the first place, that as, under the general law (section 4375, Kentucky Statutes) the apportionment to each school district of its pro rata share of the school fund is to be made by this State official upon the returns of the various county superintendents, and as no such returns have been made here, but only returns from the school board, therefore, the motion should have been refused absolutely. We think, however, an inspection of section 2974 of the statute will show clearly that where a city of the first class establishes and maintains a common school system its school board stands in the place of the

county superintendent, and it is its duty to make a return of the number of children of school age to the State Superintendent. The county superintendent is expressly relieved of any duty with respect thereto, and is enjoined from having any control thereof.

In the second place, it is argued that this board has not made such a return to the superintendent as the law requires. The statute on this behalf (2974) requires a census of the children of school age to be taken at least once in every five years, and a due return of this census is to be made "to the superintendent of public instruction at the same time other school trustees are required to make their returns. * * * For the years in which the census is not required to be taken the board shall, at the time such returns are required to be made, prepare, mail and cause to be placed in the hands of the superintendent of public instruction a report, duly certified, of the number of children of school age as shown by the last preceding report or census, with such an increase or addition to that number as is ascertained to be the annual increase of the children of the district upon averaging the yearly increase during the five years next preceding the filing of the report: Provided, however, that the board may cause an actual census to be taken in any of such years, and so report to the superintendent, as heretofore required to be done, in every fifth year."

The complaint is that only the number of the children coming within the school age were certified to the superintendent by the board, and not the name, age, sex, etc., as required of "other trustees" under the general law (section 4449). If it be conceded that such a return only has been made, it

would be in exact accord with the statute. The contest here is over the enumeration for the year 1897, and as there was an actual census in 1896, no other return is required to be made in 1897 than a certificate of the number of children as shown by the last preceding report or census, with such an increase as has been ascertained by the process pointed out in the statute. All this has been done. There is no pretense that the census or returns of 1896 or 1897 have been withheld in any way or an inspection of them denied to the superintendent. On the contrary, they have been fully exhibited, and no complaint was made in 1896 of the manner of the return of the census of that year or its results. We agree with the superintendent, however, that for the years the actual census is required to be taken a return of the census is to be made to the superintendent.

It is argued in the third place that even if appellant has complied with the law in the respects indicated, yet that law, in so far as it dispenses with an annual census, is in violation of the Constitution, and is special and discriminating legislation. So much of section 186 of the Constitution as is supposed to affect the question, reads as follows: "Each county in the Commonwealth shall be entitled to its proportion of the school fund on its census of pupil children for each school year."

We do not regard this section as demanding an actual census each year as a condition precedent to the right of a county or school district to receive its share of the school fund according to the number of pupil children therein. The chief purpose in view was to declare each county entitled annually to a share of the fund in proportion to the num-

ber of pupil children living therein.   The exact manner of
ascertaining the number was not the subject matter in view.
Even the general school law provides that if there has been
a failure of the trustees or county superintendents to furnish
the required reports for the current year, the returns of
the previous year are to be taken as the basis for distributing
the fund.   The law has in view the interests of the pupils
and the continuous maintenance of the common schools.   It
is not to be construed as erecting conditions upon which
their rights are to be affected and the schools crippled.   If,
however, this plan of obtaining the annual increase in the
number of children in a given locality by statistical processes
is shown to be grossly unjust to other school districts, it
would be declared to be repugnant to the equality of dis-
tribution demanded by the law.   But in view of the practical
difficulties in the way of obtaining an accurate census of
children in a large city, and the usual favor with which
statistical information of this character is regarded by those
informed on the subject, we do not regard the plan provided
for in the statute as necessarily inaccurate or in anywise
unjust to other districts where an actual census may be
readily obtained.

In cities as large as that of Louisville even an actual cen-
sus furnishes only approximately accurate results.   Hun-
dreds of young men and girls within the ages of six and
twenty live in out-of-the-way rooms and over business
houses.   They belong to no family and are at work or idl-
ing at one place to-day and at another to-morrow.   The num-
ber may be ascertained with quite as much accuracy by tak-
ing the census carefully once in five years and averaging

for the intervening four years, as by attempting an actual census every year. Besides, this process saves for the benefit of the children an annual cost of some $3,500. Nor is such legislation to be regarded as special because it in fact applies alone to the city of Louisville—that being the only city of the first class in the State. Many and different powers, rights and privileges are conferred in the various charters of the cities of the different classes within the limits of the State, but, nevertheless, the laws conferring these powers and rights are said to be general and uniform because they operate on all alike within specified classifications.

It is proper to state here that when there has been an addition of territory to the city since some former census, the consequent increase of children is not to be taken into the account in fixing the ratio of the natural increase. But while there is some contention in this case that the ratio has not been arrived at properly, we do not find the process in fact adopted subject to serious objection. We are of opinion, therefore, on the whole case that the mandamus was properly awarded and the only remaining matter of dispute is, can the superintendent question the returns of the board?

The census of 1896 was not called in question at the time, and the distribution of the school fund was made according to the lists of children then furnished. We do not think, however, that the superintendent on that account is estopped to question the accuracy of the lists if they are in fact fraudulent or grossly and manifestly inaccurate. No effort is made, or can be made, to upset the distribution of the former year, but when those returns are sought to be made the

basis of distribution for the current year, their integrity and accuracy may be the subject of judicial investigation. This is not subjecting the action of the Louisville officials to any test not applicable to other similar officers. The lists must be accepted by the superintendent as being *prima facie* correct, but in this direct proceeding against the superintendent he may at least demand that he be not required to furnish more money to the Louisville district than the evidence shows it is in fact entitled to. Whether more is demanded than its *pro rata* share is a question not free from difficulty. There is no evidence of fraud, nor can the fact that the combined population of other cities, when so aggregated as to equal the supposed population of the city of Louisville is shown to furnish a much smaller school list of pupil children, be regarded as sufficient to overturn the work of the officials making the lists in question. This fact might raise a suspicion or cause an investigation, but in itself is wholly inadequate to show either fraud or mistake. There are, however, some facts shown in this case which require a correction of the lists. It appears that under a misapprehension—obtained perhaps from the blanks sent out from the office of the superintendent—the census was commenced and proceeded with until perhaps one-third of it was completed, by taking the names of all children between the ages of six and twenty, inclusive, when, by later instructions, those beyond the age of nineteen were to be excluded. While this error was attempted to be corrected it is manifest from the sheets before us that several thousand names have been taken where the person was at least twenty years of age and have been returned as of the age of nineteen. In this

way the number of children listed as being nineteen years of age are reported at 9,285, while those below that age excluding those at the age of six average each about 5,000 in number. This is wholly inexplicable except upon the hypothesis that persons of the ages of nineteen and twenty have been set down as of the age of nineteen, and this is shown clearly by a number of the lists before us. Instead of being more the list of those at nineteen ought to have been less. So with respect to those taken at the age of six. It is possible from the statistics before us there ought naturally to have been a few more of these than at the other ages, but we find the number of those at six put down at 9,208, when the number at seven is put at 5,462—a difference wholly unaccounted for and contrary to reason or usual statistical results. It appears also that a large number have been returned as "unknown" or "names unknown," and while this is shown to have resulted from want of opportunity to get the names in some of the factories, shops, etc., still it is not in accordance with the statute.

The question of what is shown to be the correct list has received the attention of the learned and painstaking chancellor in this case, and the estimates we have made lead us to believe that the conclusions reached by him on the point involved are substantially correct, and that instead of there being some 82,000, there are only some 71,713 children shown to be of pupil age within the city of Louisville.

The judgment below is, therefore, affirmed.