PUBLIC SCHOOLS OF THE CITY OF MUSKEGON v. WRIGHT.

1. SCHOOLS AND SCHOOL DISTRICTS—APPORTIONMENT OF PRIMARY FUND.

> In apportioning to the several school districts, semi-annually, the primary school money, pursuant to statutory requirements (1 Comp. Laws, §§ 4642-4644, Act No. 36, Pub. Acts 1905), in 1908, it was the duty of the superintendent of public instruction to determine the number of children in a district from the best evidence in his power to obtain, rejecting from the census reports, if defective, the names of children which should not appear therein, and he should base his action upon a report received from the secretary of a municipal school board made up from the best obtainable sources, showing the names of children who resided in the district at that time, and the names included in the census which ought to be rejected, even though the report was received late in the year, just before the May apportionment.

2. SAME—SUPERINTENDENT OF PUBLIC INSTRUCTION—CENSUS.

> It was an improper exercise of the superintendent's discretion to reject from the list of names 91 school children whose parents or guardians, as shown in the report of the

secretary of the public schools, resided in the district, and it was unlawful to reject the names of five children who were orphans attending school in the city and living with relatives that stood *in loco parentis.*

Mandamus by the public schools of the city of Muskegon against Luther L. Wright, superintendent of public instruction, to compel respondent to change his apportionment of primary school funds for the year 1908. Submitted April 8, 1913. (Calendar No. 23,853.) Writ granted May 29, 1913.

*William Carpenter (F. A. Nims,* of counsel), for relator.

*Grant Fellows,* Attorney General, and *Thomas A. Lawler* and *F. Carew Martindale,* Assistant Attorneys General, for respondent.

McALVAY, J. The controversy in this case arises on account of the rejection by respondent of the names of certain persons resident in the school district from the census list of the relator for the year 1908 of children of school age, made under the requirements of the statute, after such census list, duly verified, was filed in the office of respondent. It was claimed by him that an examination showed that certain persons were included who by former reports appeared to be beyond the age limit, and others were claimed to be nonresidents of the district. The matter was taken up between the parties, and after some correspondence the respondent notified the secretary of relator that he had stricken from the census list 56 names of persons 20 years of age; 49 names, no parent given; 25 names, no birthday given; and one name of a child four years of age, making a total of 131 names. Upon request of relator's secretary, respondent sent him the list of these names. Relator at once made a thorough examination and investigation relative to the information desired and made a full report, giving in detail the

date of birth of those whose ages were questioned and the names of guardians or parents when required. This new list was taken by the secretary of relator to the office of respondent, where explanation was made to the deputy superintendent and a request made that the action of the department be corrected. This was promised by the deputy superintendent, who informed relator's secretary that it was too late to make the correction for the May apportionment of moneys, but that it would be done in time for the November apportionment. No correction was ever made. When this was discovered by relator and called to the attention of respondent, he refused to make any correction. Application was then made for the writ of mandamus in these proceedings.

The foregoing facts are taken from a stipulation entered into between the parties, which also shows that those children whose names were included in the new list at the time the census was taken were over the age of five years and under the age of 20. None of the names rejected were included in the new list where any doubt existed as to the right to be enumerated in the census. Five of these names were stricken from the list because in the judgment of respondent they had no parent or legal guardian living in the city of Muskegon. Relator admits that 39 names of children, of the 131 included in respondent's list furnished, were properly rejected; but insists in these proceedings that the balance of the names should have been accepted and included by respondent in the census of 1908. The apportionment of money mentioned is the primary school money, apportioned semi-annually by respondent, and paid out of the State treasury to each county according to the census of children of school age in such county.

The portions of the statute of this State relative to taking the annual school census, which are neces-

sary to be considered in this case, provide as follows: 2 Comp. Laws, § 4687 (section 22), as amended by Act No. 36, Pub. Acts 1905 (4 How. Stat. [2d Ed.] § 9908).

"It shall be the duty of all school boards and boards of education in this State to make an annual school census in their respective districts or cities as is provided in this section. * * * *Second.* In all incorporated cities or special legislative district having a population of three thousand or over, within twenty days next previous to the first Monday in June of each year, the secretary of the board of education, or other reputable and capable person or persons employed by the board of education, shall take the school census of such city as follows: *(a)* The census shall be taken and reported by wards. *(b)* Each enumerator shall make a list in writing of the names and ages of all children who are five years of age and under twenty years of age, whose parents or legal guardians reside in the ward or portion of the ward allotted to said enumerator, together with the names of said parents or legal guardians, giving the street and residence number in each case, said list to be in such form as the superintendent of public instruction may prescribe, and it shall be verified by the oath or affirmation of the person making the same by affidavit appended thereto or indorsed thereon, setting forth that it is a correct list of the parents or legal guardians, their street and residence number, the names and ages of all the children between the ages aforesaid residing in the ward, or part thereof as allotted to him. * * * *Fourth.* In cities having a population of three thousand or over, the secretary of the board of education and the several enumerators shall, immediately after the first Monday in June in each year, compare, correct and compile the entire census. The said secretary of the board of education shall then attach thereto his affidavit that the several enumerators were duly employed by the board of education and that said census has been properly compared, corrected and compiled; and forthwith, and before the second Monday in July thereafter, transmit to the superintendent of public instruction the entire census, together with his affidavit and the affidavits of the

several enumerators, and at the same time he shall transmit to said superintendent the annual statistical and financial report of said city or district. * * *"

The authority and duties of the superintendent of public instruction relative to the apportionment of the primary school money to each county according to the school census returned to him from each school district are prescribed by the following sections of the Compiled Laws of 1897 (4 How. Stat. [2d Ed.] §§ 9863-9865):

"SEC. 4642. He shall semi-annually, on receiving notice from the auditor general of the amounts thereof, and between the first and tenth days of May and November, apportion the primary school interest fund among the several townships and cities of the State, in proportion to the number of children in each between the ages of five and twenty years, as the same shall appear by the reports of the several boards of school inspectors made to him for the school year closing prior to the May apportionment and shall prepare a statement of the amount in the aggregate payable to each county, and shall deliver the same to the auditor general, who shall thereupon draw his warrant upon the State treasurer in favor of the treasurer of each county for the amount payable to each county. He shall also send written notice to the clerks of the several counties of the amount in the aggregate to be disbursed in their respective counties, and the amount payable to the townships and cities therein, respectively.

"SEC. 4643. Whenever the returns from any county, township, city, or district, upon which a statement of the amount to be disbursed or paid to any such county, township, city, or district shall be so far defective as to render it impracticable to ascertain the share of primary school interest fund which ought to be disbursed or paid to such county, township, city, or district, he shall ascertain by the best evidence in his power the facts upon which the ratio of such apportionment shall depend, and shall make the apportionment accordingly.

"SEC. 4644. Whenever any county, township, city,

or district, through failure or error in making proper report, shall fail to receive its share of the primary school interest fund, the superintendent of public instruction, upon satisfactory proof that said county, township, city, or district was justly entitled to the same, shall apportion such deficiency in his next apportionment.     *     *     *"

Respondent contends that his determination of the matter in rejecting such corrected list is final and authorized by the authority vested in him under the statute above quoted and that such determination is not subject to review.   It is admitted on the part of relator that respondent has authority under section 4643, above quoted, under certain conditions, to make an investigation to ascertain the ratio of the apportionment of primary school money; but it is insisted that his action must be based, as provided by the statute, upon the best evidence in his power to obtain under the circumstances.   Authority is claimed by respondent to sustain his contention under section 4643, above quoted.   He contends that his decision has been strictly within the provisions of this section.

In applying the provisions of this law to ascertain the ratio of apportionment of primary school money to the different school districts of this State, the department of education has adopted the commendable practice of comparing a current census report with former reports, and in the instant case, in making out the list of names rejected from the census report for 1908 returned by relator, referred to former census reports filed with the department by relator, from which it appeared that certain children were returned for more than one year as of the same age; that the date of birth was different, and other material discrepancies.   It cannot be doubted but that for purposes of reference and establishing certain facts, if such facts were all that could be ascertained, former census reports might be used by respondent in fixing

the ratio of apportionment. It has from the beginning been the policy of this State to maintain its primary schools for the education of children within school age, and to that end it has always caused to be set aside certain revenues, which, by statute, are apportioned to the several counties according to the number of children residing in each county within the age limit, "as the same shall appear by the reports of the several school boards or school inspectors made" for that purpose. The machinery of this statute is not intricate; in fact, it would be impossible to simplify it in any respect. These census reports, made by the several school districts, are the basis upon which the entire system of apportionment of primary school money is founded. That such census reports must be accepted unless they "shall be so far defective as to render it impracticable to ascertain the share of primary school interest fund which ought to be disbursed or paid," in which case authority is given, as already stated, to the superintendent of public instruction to ascertain the facts, and the legislature has been careful to point out to this officer how this shall be done, namely, "* * * he shall ascertain by the best evidence in his power the facts."

Whatever difference there may be between relator and respondent as to the method of ascertaining the facts, there is no dispute whatever but that he must act under this law and exercise his authority according to its terms. Respondent in the instant case had the right and it was his duty to report to relator such names as, from the facts within his knowledge, he considered should be rejected, and in communicating with relator and its officers he was clearly within the exercise of his duty and his authority. Complaint is made on the part of respondent that relator neglected to give prompt attention to his notices. We think it clear from the record that, although there was some

delay, as soon as relator understood the exact reasons for rejecting these names from this census return, and the information desired, the action on the part of relator was prompt and sufficient. It appears that every effort was made and every source examined, even the records of births, in order to perfect the report to the satisfaction of respondent's department. It is apparent, and appears to be uncontradicted, that the department was satisfied, and a promise made by the deputy superintendent that favorable action would be taken. Respondent therefore at that time, whether it was early or late for the apportionment of that year, was in possession of facts presented to him, ascertained by the best evidence obtainable under the circumstances, and it was then his duty to accept such evidence and act upon it. It appears from this record that he refused to do so and contended in the argument before this court that his action is justified under the law and not subject to review by this court.

Attention is called to the fact that relator in its investigation was satisfied that some of the names had been properly rejected by respondent, but as to the names of 91 children of proper school age, whose parents or guardians resided in the school district at the time the census was taken and which respondent has refused to include in making the apportionment required by the statute, relator insists that under the law the department had no right to exclude, and this court should order that they be included and enumerated.

Relator also contends that five other persons were improperly excluded by respondent from this census report. They were all children of school age. Respondent contends that they should not be included for the reason that it does not appear that their parents or legal guardians resided within the district. The stipulated facts show that three of these children

are orphans. Two of these orphans reside with their respective sisters, who care for and have control over them. The third orphan has lived with a woman not a relative for several years and she supports and has control over him. Of the remaining two, the father of one lives in Norway, and the child has lived in Muskegon for several years with an aunt, who brought her to this country and has control over her. The other has but one parent, a father, living, who has not resided in this State for eight years. She has lived in Muskegon during all that time with her grandfather, who has cared for and controlled her. She is enrolled in the public schools. None of these five persons, who exercise the custody and control over these children, has adopted them or been appointed guardian over them. These five children have all resided within this school district for several years. They are of school age, and under the law they are entitled to be received and instructed in the public schools. These persons who control, care for, and maintain them, upon refusal to send them to such schools, may, under the compulsory attendance act, be prosecuted, fined, and imprisoned for such neglect. These people in all respects stand *in loco parentis* to each of these children, being actual guardians, and should be considered as their legal guardians under this statute, and they should be included in the school census. Such construction, under the liberal educational policy of this State, is a natural and reasonable one in the interest of these children and for the public good, and cannot be considered as allowing an indiscriminate addition of aliens and nonresidents to the school census, but can extend only to cases where the facts are similar to these under consideration.

In our determination of the important questions presented upon this record we do not in any manner limit the duties and authority of the respondent. He

is at liberty under this law, of his own motion, to make any reasonable investigation in cases of this kind, for the purpose of correcting defective census reports in order to ascertain the ratio for the apportionment of primary school funds.   As already stated, his conclusion must be founded upon the best evidence in his power obtainable.

Our conclusion therefore is that relator, both as to the 91 children and the five children, whose names were rejected by respondent, is correct in its contention that they should be included and enumerated in the census report of 1908, and that it is entitled to the relief prayed.   A writ of mandamus will issue in accordance with the prayer of the petition, without costs to either party.

STEERE, C. J., and MOORE, BROOKE, STONE, and OS-TRANDER, JJ., concurred.   KUHN and BIRD, JJ., did not sit.