BOARD OF EDUCATION OF CITY OF DETROIT *v.* AUDITOR GENERAL.

SCHOOLS AND SCHOOL DISTRICTS—CONSTITUTIONAL LAW—STATUTES —DISTRIBUTION OF PRIMARY SCHOOL INTEREST MONEY.

Act No. 53, Pub. Acts 1925, providing for the distribution of primary school interest money to school districts on the basis of 95 per cent. in proportion to the number

Schools and School Districts, 35 Cyc. p. 822.

of school children in the district, and 5 per cent. on the basis of assessed valuation of the district, is unconstitutional in that it conflicts with section 9, Art. 11, of the Constitution, as amended in 1911, which provides, by implication if not expressly, that the basis of such distribution is by count of the children of school ages.

Appeal from Ingham; Carr (Leland W.), J.   Submitted October 26, 1927.   (Docket No. 120.)   Decided April 3, 1928.   Rehearing denied June 5, 1928.

Bill by the board of education of the city of Detroit against Oramel B. Fuller, auditor general, and others to enjoin the distribution of the primary school interest fund under the provisions of Act No. 53, Pub. Acts 1925.   The boards of education of Maple Ridge township and school district No. 1, fractional, of Evangeline township, were permitted to intervene as parties defendant.   From a decree for plaintiff, defendants appeal.   Affirmed.

*Charles P. O'Neil,* Corporation Counsel, and *Clarence E. Page* and *Arthur F. Lederle,* Assistants Corporation Counsel, for plaintiff.

*William W. Potter,* Attorney General, and *Arthur E. Kidder,* Assistant Attorney General, for defendants.

*Glenn W. Jackson (Rees, Robinson & Petermann,* of counsel), for intervening defendant board of education of Maple Ridge township.

*J. M. Harris,* for intervening defendant board of education of school district No. 1, fractional, of Evangeline township.

CLARK, J.   A review of the Territorial Laws of Michigan will show that the chief basis for distributing public moneys to school districts was a count of children of school age.   And during all the period of statehood, until 1925, nearly 90 years, this basis for ap-

portioning the primary school interest fund has been continued and kept inviolate.

In *Muskegon Public Schools* v. *Wright,* 176 Mich. 6, this court said:

"These census reports, made by the several school districts, are the basis upon which the entire system of apportionment of primary school money is founded."

Prior to 1911, at least, it was founded and continued, not by constitutional mandate, but upon common favor, understanding, and approval.

Taking the school child as the unit, the distribution was equal. A child in Gogebic and a child in Wayne were favored alike.

By Act No. 53, Pub. Acts 1925, the legislature attempted two radical departures from what had been the historical and established practice with respect to the fund, namely, an unequal distribution, and a new basis of apportionment, assessed valuation, the former relating to but 5 per cent. of the fund, and the latter used in a limited sense, to add assessed valuation to census reports as a basis of apportionment of said part of the fund.

To test the constitutionality of the act, plaintiff filed this bill and had decree from which defendants have appealed. The trial court in an opinion to support decree held, in substance, that the Constitution requires an equal distribution of the fund, and that, as the act provides otherwise, it is not constitutional. The reasoning is persuasive, and it may be that the holding can be sustained, but we prefer to rest decision on different ground.

That the count of children of school age as the basis for apportioning primary school interest funds is historical and of long standing and common acceptance presents no obstacle to the legislation in question. Rather it is as stated by the attorney general:

"In the construction of Act No. 53 of the Public

Acts of 1925 it is necessary that those who attack the same as unconstitutional, be able to point out that the rule fixed and established by the Constitution is inconsistent with the rule fixed and established by Act No. 53 of the Public Acts of 1925."

The pertinent provisions of the act are as follows:

"SEC. 4. He (the superintendent of public instruction) shall in the year nineteen hundred twenty-six and annually thereafter on receiving notice from the auditor general of the amounts thereof and between the fifth and the fifteenth days of July apportion ninety-five per centum of the primary school interest fund among the several townships and cities of the State in proportion to the number of children in each between the ages of five and twenty years as the same shall appear by the reports of the several township clerks and school districts made to him for the school year closing in July of the preceding year; *and the remaining five per centum shall be apportioned among all school districts which have an average school membership in excess of the average for the whole State for each one hundred thousand dollars of equalized valuation in a manner such that the amount apportioned to each school district for each school census child shall be in direct proportion to the number by which the average school membership of the district exceeds the average for the whole State for each one hundred thousand dollars of equalized valuation. In computing the average school membership for each one hundred thousand dollars of valuation, whether for the State or any school district, the nearest whole number shall be used; except that when the average school membership for each one hundred thousand dollars of valuation is equally distant from two whole numbers, the next higher whole number shall be used for the purposes of this section.*" * * *

In 1911, section 9, Art. 11 of the Constitution was amended to read as follows:

"The legislature shall continue a system of primary schools, whereby every school district in the State shall provide for the education of its pupils without charge for tuition; and all instruction in such schools shall be

conducted in the English language. If any school district shall neglect to maintain a school within its borders as prescribed by law for at least five months in each year or to provide for the education of its pupils in another district or districts for an equal period, it shall be deprived for the ensuing year of its proportion of the primary school interest fund. *If any school district shall, on the second Monday in July of any year, have on hand a sufficient amount of money in the primary school interest fund to pay its teachers for the next ensuing two years as determined from the pay roll of said district for the last school year, and in case of a primary district, all tuition for the next ensuing two years, based upon the then enrollment in the seventh and eighth grades in said school districts, the children in said district shall not be counted in making the next apportionment of primary school money by the superintendent of public instruction; nor shall such children be counted in making such apportionment until the amount of money in the primary school interest fund in said district shall be insufficient to pay teachers' wages or tuition as herein set forth for the next ensuing two years.*"

By the amendment the said census basis of apportioning equally the primary school money, though ancient and long established, first found expression in the Constitution. It was there expressly adopted, we think, but in any event the necessary implication of the language is that the basis of apportioning the fund is a count of children.

If the legislature may dispose of 5 per cent. of the fund in the unequal manner attempted by the act, it may so dispose of a larger part or of all of the fund; if it may use assessed valuation as a basis of apportionment in a limited or qualified sense, it may use it to the full extent, and it then may provide that the whole fund be apportioned on the sole basis of assessed valuation or otherwise as it may determine—this is not and cannot well be controverted. It seems clear that the power of the legislature so to do is challenged by the section of the Constitution above quoted. The section

states the basis of apportionment of primary school money, a count of children. If counted in any district they must be counted in the entire State. Neither the legislature nor the courts may strike from that section the words "the children in said district shall not be counted in making the next apportionment of primary school money" and substitute therefor the words "The assessed valuation of the district shall not be considered in making the next apportionment of primary school money;" nor these words "The children in said district shall not be counted nor assessed valuation considered in making the next apportionment of primary school money."

It is hardly necessary to say that a provision of the Constitution cannot be repealed or amended directly or indirectly by the legislature, nor can it be set aside by the courts. That the statute must fall because it conflicts with express language and necessary implication of the Constitution seems clear.

The matter of education in this State is with the legislature with few constitutional restrictions. But such restrictions stand. One of them fixes the basis of apportioning equally primary school money—a count of children.

That in some school districts taxes are nearly if not quite confiscatory appeals strongly to the minds and hearts of both legislators and judges, but both are powerless. The people of the State adopted the Constitution. They alone may make the modification sought.

The decree is affirmed. No costs.

NORTH, FELLOWS, WIEST, McDONALD, and SHARPE, JJ., concurred.

The late Chief Justice FLANNIGAN and the late Justice BIRD took no part in this decision.