[No. 1638.]

STATE OF NEVADA, EX REL. H. W. MILES, ET AL., AS THE BOARD OF SCHOOL TRUSTEES OF THE DELAMAR SCHOOL DISTRICT NO. 18, LINCOLN COUNTY, NEVADA, RELATORS, *v.* SARAH WEDGE, AS SCHOOL SUPERINTENDENT OF PUBLIC SCHOOLS OF. LINCOLN COUNTY, NEVADA, RESPONDENT.

SCHOOL FUNDS—APPORTIONMENT—CENSUS—COUNTY SUPERINTENDENT'S RIGHT TO CORRECT—MANDAMUS—INSUFFICIENCY OF ANSWER—LEAVE TO AMEND—AFFIDAVITS—EFFECT.

1. Comp. Laws 1900, sec. 1301, makes it the duty of the census marshal to take annually a census of school children in his district, and report it to the county superintendent. Section 1303 provides that, if the county superintendent believes that a correct report has not been returned, he may appoint a census marshal, and have the census retaken. Section 1338 requires the superintendent to apportion the school moneys among the several school districts of his county on the basis of the census. *Held*, that the superintendent has no power to correct, without ordering a new census, the census marshal's report, and make his apportionment of school moneys on the basis of such corrected report.

2. While affidavits filed in support of an answer to a writ of *mandamus* cannot be considered on a hearing of a demurrer to the answer, they may bear upon the question of whether respondent should have time to file an amended answer.

3. Comp. Laws 1900, sec. 1301, requires an annual school census of all school children of the district on the 1st day of May, which shall be reported to the county superintendent by the 15th of June. Section 1303 provides that if "at any time" the superintendent has reason to believe that a correct report has not been returned, he may have the census retaken. In response to *mandamus* to compel payment of additional school moneys to a district on the basis of a census, the superintendent alleged that, of the 152 children enumerated in the report, 62 were not residents of the district on the 1st of May, and that the report was fraudulent in that regard. *Held* that, as the statute contemplated ascertaining at a subsequent time the children who were residents on the 1st of May, the superintendent, on a demurrer being sustained to his answer, would be given time in which to order a new census, and set it up by way of amended and supplemental answer.

MANDAMUS by the State of Nevada, on the relation of H. W. Miles and others, as the Board of School Trustees of Delamar School District, No. 18, in Lincoln County, against Sarah Wedge, as County Superintendent of Public Schools of Lincoln County. On demurrer to respondent's answer to an alternative writ. **Demurrer sustained,** and respondent given time to file amended answer.

The facts sufficiently appear in the opinion.

*Samuel Platt* and *F. R. McNamee,* for Relators:

I. The duty of the several county superintendents of schools is prescribed by statute. These duties ascribe to the county superintendent both judicial and ministerial functions. There are occasions when judgment and discretion control the duty, but in the main the county superintendent acts according to the prescribed letter and spirit of the statute. One of the duties of the county superintendent is to make the apportionment for the support of the schools of the several districts within his particular jurisdiction. The law prescribes how that apportionment shall be made and upon what basis the respective amounts shall be estimated. The legislature has enacted that a census marshal shall be appointed who shall file a printed return of the number of children between the ages of six and eighteen years residing within his particular district. If the county superintendent should be dissatisfied, for any reason, with the return of any census marshal, the law imposes a duty in the nature of a privilege empowering the said county superintendent with the right to order a retaking of the census. If no new

census is ordered, the statute makes it absolutely obligatory upon the county superintendent to make the apportionment as prescribed by law. A refusal to do so is a violation of duty and a breach of the law.

II. The answer admits that respondent failed to order a new census taken. The answer admits that respondent was advised by officials competent to advise her, and from whom she was duly authorized to secure advice, to retake the census of said district, but, upon further advice from the state superintendent of public instruction, respondent did not retake said census.

III. This honorable court has established these principles of law as applicable to cases like the present. (1) The presumption of the law is that the census marshal did his official duty and that his report is correct. (2) If the return of the marshal did not correctly report the number of children in the district, the statute provides a remedy and mode of securing a correct census. (3) That if the above remedy be not resorted to, the court, and all concerned in the case, are bound by the said return of the census marshal. (*State* v. *Sweeney*, 24 Nev. 350.)

*Benjamin Sanders*, District Attorney, for Respondent:

We will devote ourselves to the relators' demurrer. Commencing at note "b" they say: "The said answer admits that respondent failed to order a new census taken, and, therefore, said census marshal's return is confessedly the only return upon which the appraisement could be legally based." In the first denial of respondent's answer, she says she denies that the census marshal's return of the school children between the age of six and eighteen years of Delamar school district No. 18 is a legal census return as is required by the laws of this state made and provided, taken by Mr. Edward Shier in May, 1902. In justification of this denial, respondent alleges that she knew of her own knowledge that two of the children recorded in said census return, alleged therein to be residents of said school district, are residents of another district. Now, I ask the court was not this young lady justified, the very moment she discovered that the document she was called upon to operate was branded with the

marks of fraud—I ask you: Was she not justified in repudiating it?

By the Court, FITZGERALD, J.:

This is an original proceeding in this court by the relators as the board of school trustees of the Delamar school district, No. 18, in Lincoln county, for writ of mandate to respondent, that, of the state school moneys apportioned to said county, respondent, as the regularly elected, qualified, and acting county superintendent of public schools of said county, apportion the sum of $90.15 in addition to the sum that respondent has already apportioned to said district. Relators base their claim to the writ on the report of the school census marshal of said district, made in 1902, claiming that under said report the number of census children in said district was sufficient to entitle the said district to said additional sum.

In answer to the alternative writ herein issued, respondent states as follows:

"Now comes the respondent, Sarah Wedge, and admits, narrates, and alleges, in her answer to the alternative writ of mandamus issued out of the Supreme Court of the State of Nevada on the 23d day of March, A. D. 1903, in which she is the respondent: She admits that she is the duly elected, qualified, and acting county superintendent of public schools in and for Lincoln county, State of Nevada. Respondent alleges that she has no way to answer the allegations alleged against her in relators' application for this writ, for the reason that a copy thereof has not been served upon her. Wherefore she respectfully asks the permission of said court to narrate herein all of the facts and circumstances which caused her to apportion the public school money as she did, and not to be guided by the census marshal's return, taken during the month of May, 1902, for School District No. 18; that being the Delamar school district. Firstly, she denies the said census marshal's return of all school children between the age of 6 and 18 years of Delamar school district, No. 18, is a legal census, taken, as is required by the laws of this state made and provided, in May, 1902, for Delamar school district, No. 18. In justification of this denial,

respondent alleges that she knows of her own knowledge that two of the children recorded in said census return, alleged therein to be F. F. Wilcox's, are the daughters of Mr. N. Wadsworth, of Panaca; that they drew school money in Panaca district during the year 1902, were registered in Panaca census return for May, 1902; and that they never resided in Delamar school district, nor went to school there.

"Upon her information and belief, respondent further alleges: That there are fully sixty children recorded in said census marshal's return which are unlawfully and wrongfully, and contrary to law, recorded on said census return. That she believes that she can show by good and competent witnesses that, at the time said census was taken, some of said sixty children were living in Italy, some in England, and some in other states of this republic, who had never been to the State of Nevada; those born in the United States had never been to the State of Nevada. Others, your respondent can show, who had previously lived in the town of Delamar, State of Nevada, and attending school there, had left and removed to other states of this republic, and to other counties in this state, and had at the time said census was taken, in May, 1902, permanent and substantial homes in other states, and other counties of this state, and did not intend to return to said Delamar school district, or had not yet returned. That your respondent had inquired of the officers competent to advise her in such matters, and she had been advised to proceed in accordance with the 5th subdivision of section 2, art. VII, of the school law of 1901, and retake the census of said district, but subsequently she received a communication from the state school superintendent, who advised against such proceeding at that time; hence, knowing that there had been a public wrong done, and knowing of her own knowledge that there had been two children recorded on said census return, and believing that they had been wrongfully and unlawfully put there, and knowing that said two children were all that entitled said Delamar district to three teachers, and the portion of the school money alleged in said writ, and so prompted by her own sense of justice, she took it upon herself to apportion

the money as she did, and she now believes that she was justified in so doing."

To this answer the relator filed the following demurrer:

"Now comes the relator and demurs to the answer filed by the respondent herein in the above-entitled matter, upon the ground (1) that the said answer does not state facts sufficient to constitute a defense to said action, in this: (*a*) The said answer admits the census marshal's return taken during the month of May, 1902, for school district No. 18; that being the Delamar school district. (*b*) The said answer admits that respondent failed to order a new census taken, and, therefore said census marshal's return is confessedly the only return upon which the apportionment could be legally based. (*c*) The said answer is insufficient, in that it is, in form and substance, a petition praying for leave of court to set up facts and circumstances in justification, and does not purport to deny immediately the averments in relator's petition, or any thereof. (*d*) That the so-called answer itself shows that the respondent acted judicially, and not ministerially; that she was directed to perform a duty which she failed to perform, or advised to refrain from performing a duty which she should have performed; and that it is no defense to attempt to justify a wrong, where the wrong consists of the violation of a duty which the statute mandatorily imposes. Wherefore relator prays judgment for the sum of $90.15, paid as prayed for in relator's petition, and for costs."

On the petition for the writ, the answer, and the demurrer, two questions, it seems, are before this court, to wit: (1) Is the answer sufficient? and (2) if not, what disposition of this proceeding should be made?

In answer to the first question, we state that we think the answer is not sufficient. The three following sections of the school law of Nevada, it would seem, control and govern this matter:

Section 1301 of Compiled Laws of Nevada (1900) reads as follows:

"It is the duty of the census marshal: First—To take annually between the first and thirty-first days of May, inclusive, a census of all children under eighteen years of age and over six years, who are residents of his district on the

first day of May.    Second—To report the result of his labors
to the county superintendent of schools on or before the
fifteenth day of June in each year.    Third—He shall, when
practicable, visit each habitation, home, residence, domicile,
or place of abode in his district, and by actual observation
and investigation enumerate the census children of the same."

Section 1303 reads as follows:

"* * * Fifth—If at any time the county superintendent
has reason to believe that a correct report has not been
returned, he may appoint a census marshal, have the census
retaken, and the compensation shall be audited by the county
commissioners, and paid out of the county general fund."

And section 1338 reads as follows:    "It shall be the duty
of the county superintendent of public schools, upon receiv-
ing notice from the county treasurer and the county auditor
as provided in this act, to apportion the public school moneys
in the county treasury among the several school districts of
his county, as follows:    First, he must ascertain the number
of teachers each district is entitled to, by calculating one
teacher for every seventy-five census children or fraction
thereof as shown by next preceding school census; second,
he must ascertain the total number of teachers for the county
by adding together the number of teachers assigned to the
several districts upon the basis of one teacher to each sev-
enty-five census children or fraction thereof; third, forty per
cent of the amount of the apportionment from the state and
county school fund shall be apportioned equally to each dis-
trict for every teacher assigned it, upon the basis of seventy-
five census children or fraction thereof; fourth, all school
moneys remaining on hand after apportioning forty per cent
of the state and county apportionment equally to each dis-
trict for every teacher assigned it upon the basis of seventy-
five census children or fraction thereof, must be apportioned
to the several districts in proportion to the number of chil-
dren between the ages of six and eighteen years, as returned
by the school trustees and census marshals, and to forthwith
notify the county treasurer, county auditor and the school
trustees in writing of such apportionment in detail.    He shall
make such apportionment on the first Monday in January of
each year, and quarterly thereafter. * * *"

The report of the school census marshal provided for in said section 1301 is the only foundation for apportionment of state school moneys to school districts. Respondent, as superintendent of public schools, had no legal right to make the school census report, and then apportion moneys on such report, or, which is practically the same thing, correct the report of the duly appointed school census marshal, and apportion moneys on such corrected report. Hence it seems, as respondent's answer stands, it is insufficient.

The answer to the second question above stated, to wit, what ruling should be made on this demurrer, is not altogether free from difficulty. Counsel for relators contend that their demurrer to the insufficient answer should be sustained, and a peremptory writ of mandate to respondent to apportion the additional $90.15 should be issued. Under the peculiar circumstances of this case, we think such a disposition of it would scarcely be in accordance with justice or law. Respondent, in answer to the alternative writ, alleges, in effect, that the report of the school census marshal, on which relators base their claim, is an untrue, false, and fraudulent document and report; that, of the 152 children in said report reported, 62 were falsely and fraudulently reported; that none of said 62 children were residents of said district on the 1st day of May, 1902. If that allegation be true, the document contains a little over 40 per cent of fraud. A fraud of 40 per cent is too gross to be passed over lightly.

Respondent makes no allegation of any legal attempt to correct the said alleged fraud—on the contrary, states official advice in excuse for not making such attempt. In considering the point, two things should be kept in mind: (1) That from June, 1902, to January, 1903, respondent had no chance to make the correction, as respondent did not enter upon the office of superintendent of schools for Lincoln county until January, 1903. Before the last-named date, respondent's predecessor in the office of school superintendent had exclusive control of the matter. For under section 1303, above cited, only the superintendent of public schools had the power to order a new school census report for School District No. 18. And (2) the question of how this school

money should be applied is not a question exclusively
between the relators and the respondent. The people are
deeply interested in this question. All good citizens of our
country are interested in seeing the school moneys properly
applied. No district, parent or pupil should be deprived of
the proper quota; and, if one district gets over its quota,
each other district is, in proportion, injured, and parents
and pupils in the other districts deprived of their just rights.

The school fund is a sacred fund. From it alone have
many children of our country any hope of getting the edu-
cation so needful to them in their preparation for life's hard
struggle, and the duties of American citizenship. This fund
should be fairly and equitably administered. The utmost
good faith should characterize every one connected with its
management and distribution. Section 1303, above quoted,
provides that "if at any time the county superintendent has
reason to believe that a correct report has not been returned,
he may appoint a census marshal, have the census retaken,"
etc. The question is, is it too late to have that done now?
Certainly, under the language used, if nothing else controls,
it is not. "At any time" is a very broad and extensive per-
mission. On this point it should be borne in mind that
under section 1301, above quoted, it is "census children
* * * who are [were] residents of his district on the 1st
day of May," 1902, that is to control. The census report
was due on the 15th of June, 1902; and, if a new census
had been then ordered, it could not have been taken and
reported until at least some two months after the 1st day of
May, 1902. So it would seem that the number of census
children, residents of the Delamar district on the 1st day of
May, 1902, may still be legally ascertained; and, if so, this
is the controlling fact of the case.

Respondent has filed some affidavits in support of the
fraud alleged in the answer. They, of course, could not
have any bearing on the question of the sufficiency of the
answer assailed by the demurrer. But if respondent should
desire to file amended and supplemental answer, and to
supply the deficiencies in the insufficient answer by alleging
a new school census marshal's report, showing the number
of census children in Delamar district on the 1st day of

May, 1902, provided respondent in the meantime sees proper to have such new report made, and also any other matter respondent may desire to set up in answer or in supplemental answer to relators' petition, then these affidavits may bear upon the question of whether respondent should have time to file such amended and supplemental answer to the said petition.

It is therefore ordered that the demurrer herein be sustained; that the respondent be given time to file an amended and supplemental answer; that, as respondent alleges that no copy of relators' petition for the writ was ever served upon her, relators serve upon respondent a certified copy of their petitions for writ of mandate; and that the respondent have 40 days after being so served in which to file amended and supplemental answer.

BELKNAP, C. J., and TALBOT, J., concur.