BOARD OF EDUCATION OF ALPINE SCHOOL DIST.,
UTAH COUNTY, et al. v. BOARD OF EDUCATION OF
SALT LAKE CITY et al.

No. 3949.   Decided March 23, 1923.   Dissenting Opinion March 28,
1923.   Rehearing Denied October 4, 1923.   (219 Pac. 542.)

1.   SCHOOLS AND SCHOOL DISTRICTS—REVISION OF ENUMERATION OF
SCHOOL POPULATION MADE BY APPOINTED ENUMERATIORS COULD
NOT BE MADE BY BOARD OF EDUCATION OR ITS CLERK.   Under
Sess. Laws 1921, c. 103, amending Comp. Laws 1917, §§ 4674,
4675, relating to the method of ascertaining the school popu-
lation and reporting it to the state superintendent to be used
as a basis for the distribution of school funds, a board of
education, through its clerk, after the report of the enumera-
tors appointed under section 4674, could not correct it by hav-
ing it checked by the principal of each grade school of the
district and transmit to the superintendent of public instruc-
tion a statement of the school population greater than that
reported by the enumerators.

2.   SCHOOLS AND SCHOOL DISTRICTS—STATUTE RELATING TO TAKING
OF SCHOOL POPULATION DIRECTORY ONLY IN MATTER OF TIMES
SPECIFIED.   The times specified in Sess. Laws 1921, c. 103,
amending Comp. Laws 1917, § 4674, 4675, relating to the ascer-
tainment of the school population and the report of such
enumeration to the state superintendent, to be used as a basis
for the distribution of school funds, are directory merely, and
the things therein required to be done may be done within a
reasonable time after the dates specified, so long as the best
interests of the school are not injuriously affected.

3.   SCHOOLS AND SCHOOL DISTRICTS—SCHOOL FUNDS PAID TO DIS-
TRICT IN EXCESS OF PROPER ALLOTMENT MAY BE DEDUCTED FROM
FUTURE ALLOTMENTS.   Where, due to improper report of the
school population, funds have been distributed to a school dis-
trict under Comp. Laws 1917, § 4518, in excess of the amount
to which that district is entitled, the matter may properly be
adjusted by deducting the excess from funds to be similarly
distributed in the future and distributing it to those districts
which should have received it in the first instance.

On Application for Rehearing.

4.   COURTS—SUPREME COURT MAY GRANT MANDATORY ORDER CON-
CERNING DISTRIBUTION OF STATE SCHOOL FUNDS.   In a proceed-
ing by divers school districts to review proceedings of the

board of education of a district in respect to the apportionment and distribution of school funds by the state, where the parties have stipulated that the controversy might be determined upon its merits, the Supreme Court can properly grant a mandatory order requiring the clerk of defendant board to forward a true statement of the school population of defendant district in accordance with the enumeration made by the emumerators of the district, and further requiring superintendents to make apportionments in accordance with such enumeration.

5. SCHOOLS AND SCHOOL DISTRICTS—TAKING OF NEW SCHOOL CENSUS TO BE USED AS BASIS FOR DISTRIBUTION OF STATE FUNDS HELD UNWARRANTED. In action to review the proceedings of the board of education of a school district in respect to the determination of the school population and the distribution of school funds, where it has been determined that defendant's clerk improperly revised the enumeration of the duly appointed enumerators, and an order entered requiring distribution to be made in accordance with the enumeration before revision, defendant district on an application for rehearing was not entitled to a modification of the previous order so as to permit the taking of a new census in the manner in which the first should have been taken.

6. EVIDENCE—MATTER OF COMMON KNOWLEDGE THAT POPULATION OF SALT LAKE CITY IS FLUCTUATING AND CHANGING. It is common knowledge that the population of Salt Lake City, in some respects, is fluctuating and changing.

FRICK, J., dissenting.

Original proceeding by the Board of Education of Alpine School District, Utah County, and others, against the Board of Education of Salt Lake City, George King, Clerk of said Board, and others.

JUDGMENT FOR PLAINTIFFS.

*J. D. Skeen,* of Salt Lake City, and *S. P. Dobbs,* of Ogden, for plaintiffs.

*Cheney, Jensen, Holman & Stephens,* of Salt Lake City, for defendants.

THURMAN, J.

The plaintiffs, consisting of divers school districts in the state of Utah outside of Salt Lake City, bring this action to review the proceedings of the board of education of Salt Lake City, George King, its clerk, and certain state officers, in respect to the apportionment and distribution of school funds for the year 1922, belonging to the school districts of the state. It is claimed by the plaintiffs that a portion of said funds has already been apportioned and distributed contrary to law, and that other funds will be apportioned and distributed, and that, as against said unlawful procedure, plaintiffs have no appeal or other plain, speedy, or adequate remedy at law. The basis of plaintiffs' contention is that defendants, especially the board of education of Salt Lake school district and its clerk, George King, for the year 1922, disregarded the statute which provides for ascertaining the school population of the various school districts, and made an erroneous report to the state superintendent of public instruction of the school population of Salt Lake City school district, whereby it was made to appear that there were 5,038 more school children within said district than actually existed according to the census authorized by law. It is then alleged that the other school districts of the state, including plaintiffs, followed the method required by law in taking and reporting the school population of their respective districts, and that because of the erroneous report made by the board of education of Salt Lake City and its said clerk, and the adoption thereof by the state superintendent of public instruction, the apportionment of the school funds made by him among the several school districts of the state resulted in an excess allowance to the Salt Lake City district of a sum amounting approximately to $100,000, a large portion of which has already been paid. The superintendent of public instruction, the state auditor and state treasurer are made parties defendant, because of their legal duties in respect to the school fund and their participation in the aforesaid distribution.

In response to the petition of plaintiffs a writ was issued and served commanding each of the defendants to certify

fully to the court at a time named in the writ a transcript of all records and proceedings pertaining to his office, relating to the enumeration of the school population and the apportionment and distribution of the school fund for the year 1922.

In answer to said writ, each of the defendants made full and complete returns as to all matters required, as far as his particular office was concerned. It will not be necessary to consider these returns in minute detail as to each defendant, because, as will later appear, the controlling question in the case is as to the legality of the proceedings of the board of education of Salt Lake City, and its clerk, George King, in taking the census of the school population of said district and the report thereof by said clerk to the superintendent of public instruction.

Before considering in detail the return of the Salt Lake City school board and its clerk, it will be illuminating at this point to quote two or more sections of the statute providing the manner of taking the census and the nature of the report to be made by the clerk to the superintendent of public instruction. Compiled Laws Utah 1917, §§ 4610 and 4611, as amended in Sess. Laws 1921, c. 103, prescribe the method of taking the census and reporting the same in precincts outside of cities of the first and second classes, while sections 4674 and 4675, as amended in said chapter, prescribe the method within such cities. By casual comparison it will be seen the methods are exactly the same. We will therefore only quote the sections last referred to:

4674. "The board of education shall appoint suitable persons for each ward, who shall act as enumerators for school population for said ward, and visit every house therein between the 15th and 31st of October of every year, and ascertain and enter upon the lists the name of every person residing in such ward who on October 31st of that year shall have reached the age of six and shall not have reached the age of eighteen. Provided, that all children between said ages attending other than the district or public high schools outside the district in which they reside, shall be enumerated in their home district. Such enumeration lists shall contain all information required by law, and such other information as the state superintendent or the board of education may require.

·4675. "The enumeration lists shall be filed with the clerk of the board as soon as completed, and not later than the tenth day of November. Immediately thereafter the clerk of the board shall make out and forward to the state superintendent a statement showing the number of children of school age residing in the district, together with all other information obtained under the provisions of the next preceding section that may be required by the state superintendent."

The return of the board of education of Salt Lake City, and its clerk, together with that of the state superintendent of public instruction, are, in substance, as follows: Immediately after the 10th day of October, 1922, the clerk of the board, George King, presented to the board a list of persons to be considered by the board as census enumerators. Said list was approved by the board, and at its regular meeting on October 10th it was resolved by the board that said persons be appointed and the clerk was authorized to make all arrangements necessary for taking the census. The clerk thereupon caused said persons to enter upon their duties as census enumerators and furnished them with cards upon which were to be recorded the names of persons within school age residing in the district on October 31, 1922; one card was to be used for each family. Prior to the 31st of October the enumerators filed with the clerk 19,000 cards of the form prescribed and in addition thereto, under the direction of the clerk, each enumerator, upon a separate form, compiled the total number listed by him, and filed the same with the clerk. Then follows an explanation in the returns as to just what was done by the clerk as affecting the census made by the enumerators and his reasons therefor. The paragraph containing the explanation is somewhat lengthy but as it constitutes the real foundation of all the grievances complained of by the plaintiffs we prefer to state it in defendants' own language:

"That an examination of the original cards of said enumerators and an examination of the said enumerators' lists compiled therefrom caused said clerk to conclude that said enumerators, in the taking of the said census, had failed to make a complete and full enumeration of the children of school age residing in Salt Lake City school district on October 31, 1922; that the said enumeration lists disclosed a total of 28,264 children of school age in the

Salt Lake City school district as of said date, or approximately 1,200 less than for the year 1921; that compared with the actual enrollment of children in the Salt Lake City public schools for the months of September and October, 1922, and compared with other facts known to said clerk, said enumeration lists disclosed to said clerk an inaccuracy or incompleteness to the extent of approximately 5,000 persons; that thereupon, to wit, under date of November 14, 1922, the said clerk advised the said board of education of the prima facie inaccuracy and incompleteness of the record of said enumerators, and further advised said board that pursuant to instructions given him to take all necessary steps in connection with the annual school census he had caused the original census cards to be forwarded to the principals of the various schools in Salt Lake City school district for the purpose of having them check the names, ages, and residences of the children appearing upon said census cards against the names, ages and residences of the children enrolled in each school, of statutory school age, and residing in Salt Lake City school district as of October 31, 1922; that in each grade school of Salt Lake City school district the name, age, and residence of each child attending school was duly entered upon a card, a copy of which is hereto attached, marked Exhibit C, and made a part hereof, and, as in the case of the cards of the census enumerators, all the children of each family are entered upon a single card; that under the direction of said clerk each principal of each grade school of Salt Lake City school district, after checking the names, ages, and residences of the children listed on the census enumerators' cards against the names, ages, and residences of the children listed on the cards referred to, of the form of Exhibit C, reported to said clerk the names of certain children as residing in Salt Lake City school district as of October 31, 1922, who on said date had reached the age of 6, and had not reached the age of 18, and who had been omitted in the count of the census enumerators; that the number of girls and boys in the various grade schools of Salt Lake City school district so reported as omitted from the count of the enumerators, is as follows."

Then follows the number of boys and girls, separately stated, in each of the grade schools, whose names were omitted by the census enumerators, and the number of boys and girls in each of the high schools of the district whose names had likewise been omitted, after which the return proceeds as follows:

"That the clerk of the board of education of Salt Lake City having taken the foregoing steps in connection with ascertaining and determining the number of persons residing in Salt Lake

City school district who on October 31, 1922, had reached the age of 6 and had not reached the age of 18, and being fully advised in the premise, and having concluded that the total number of persons who were residing in Salt Lake City school district on the 31st day of October, 1922, of the age of 6 years and not over the age of 18, was 16,577 boys and 16,725 girls, or a total of 33,302 persons, reported the result of his findings to the board of education of Salt Lake City, and the said board of education of Salt Lake City received and approved said report; that on December 26, 1922, said clerk made out and forwarded to the state superintendent of public instructions a statement showing the number of children of school age residing in Salt Lake City school district to be 33,302."

The returns filed by the defendants are elaborate and comprehensive, accompanied by numerous exhibits illustrating exactly what the defendants did and the manner of keeping their records. It appears from correspondence attached as exhibits that on January 2, 1923, the state auditor informed the state superintendent of public instruction that there was on hand in the district school fund, subject to apportionment, the sum of $1,573,416.78, and in the state land interest fund $158,233.34. It also appears from the returns that on January 9, 1923, the superintendent of public instruction certified to the state auditor the results of his apportionment based upon the alleged erroneous report of the Salt Lake City school board and its clerk, and thereafter, on January 11, 1923, checks were issued and paid by the state treasurer to the Salt Lake City school district the aggregate sum of $419,-605.20. It is also certified by the defendants that the said sum is $49,912.08 more than said district would have received if the funds had been apportioned upon the basis of 28,264 school children, which was the school population as shown by the original cards of the census enumerators.

The return is certified by the president of the Salt Lake City school board, and the clerk; also by the state superintendent of public instruction. The numerous exhibits attached in addition to showing the forms and tables used by the various officers also show written correspondence between the defendants in matters pertaining to their official duties, including an opinion of the Attorney General given in re-

sponse to the following question by the superintendent of public instruction:

"May a census of the school children of a city of the first class be taken under the direction of the board of education and accepted by this office as a basis for the apportionment of state school moneys, at the dates later than those specified in sections 4674 and 4675, Compiled Laws of Utah 1917, as amended by chapter 103, Laws of Utah 1921?"

The Attorney General, in effect, advised the superintendent that such census might be taken and accepted by the superintendent after the dates specified in the sections referred to if done within a reasonable time, or as soon as possible or convenient after the 10th of November. The Attorney General in the same opinion advised the superintendent, in substance, that he would be compelled to accept the list presented by the clerk of the board, regardless of the fact that the clerk had revised the list made by the enumerators by adding names thereto, provided said names were of children actually residing in the district, on the 31st day of October. Other exhibits will be referred to if necessary in the course of this opinion.

Before proceeding to a determination of the questions involved, it is pertinent to remark that in connection with their returns each of the defendants filed a motion to quash the writ on the grounds that the form of action adopted by plaintiffs is not authorized by the statutes in cases of this kind. The defendants, however, at the hearing of the cause, in view of the public interests involved, expressly waived their objection to the form of the action, and consented that the case might be determined on its merits.

Section 4674 of the statute heretofore quoted specifically declares who shall act as enumerators of the school population in each ward. The time and manner of making the enumeration, and the classes of children to be listed and returned, are clearly and definitely stated. In these respects the statute needs no interpretation. It is susceptible of but one meaning as far as the enumeration is concerned, and that is that it must be made by the enumerators appointed by the board. We are unable to agree with the

contention of defendants that the clerk of the board, or the board itself, possesses quasi judicial powers in respect to the enumeration, to the extent that he or the board may revise the list filed by the enumerators, by either adding thereto or taking therefrom. It was no doubt within their power to call the attention of the enumerators to palpable mistakes in the enumeration and give them an opportunity to correct such mistakes, but to assume to make the correction themselves and revise the list without the consent or co-operation of the enumerators appointed by the board, in our opinion was a disregard of the plain and unambiguous meaning of the statute and entirely beyond their power. For the purpose of correcting errors and perfecting the enumeration we are in accord with the views of the Attorney General that the times specified in sections 4674 and 4675 are directory merely, and the things therein required to be done may be done within a reasonable time after the dates specified, as long as the best interests of the schools are not injuriously affected by the delay.

To uphold the contention of the defendants in this case would be to bring uncertainty into the administration of the law, notwithstanding there is no uncertainty in the law itself. If the clerk of the school board, either with or without the approval of the board, can revise the enumeration made by the duly appointed enumerators, as was done in this case, we see no reason why he may not assume to make the entire enumeration himself and dispense with the services of the enumerators altogether. It will not be contended that the statute is susceptible of any such interpretation, and yet in the last analysis such is the logic of defendants' contention.

The question presented is so free from doubt that it is not surprising to find that it has seldom been the subject of judicial determination. Counsel for plaintiffs have called to our attention a few cases sufficiently analogous to the case at bar to justify referring to them in this connection. The case nearest in point and which in principle is practically on all fours with the instant case is that of *Young* v. *State*, 138 Ind. 206, 37 N. E. 984.

In that case the statute imposed the duty of making the

enumeration on the trustees of the township and required them to file the list with the county superintendent of schools, who in turn should report to the state superintendent the school population of the county. The statute also provided that in case any trustee should neglect to file such enumeration with the county superintendent the county superintendent was authorized to appoint some competent person to perform the service. In the case referred to the trustees made the enumeration required and filed the same with the county superintendent as provided by law. That officer refused to report the enumeration to the state superintendent, upon the alleged ground that the enumeration was incorrect in that it contained a greater number of children than were entitled to school privileges. The Supreme Court of Indiana states the question to be decided as follows:

"The question at issue between the parties relates to the right of the county superintendent to reject the report of enumeration made by a trustee, where he knows, or has reason to believe, that such report is incorrect, and employ some competent person to make another enumeration."

In concluding its opinion upon that question the court, at page 209 of 138 Ind., at page 985 of 37 N. E. of the report, says:

"By the above provisions of our statute the trustee is made the proper officer to take the enumeration of the school children, and, where he performs that duty, and files the required report, there is no provision for making another enumeration. The enumeration made by him, when properly and regularly reported, is, we think, binding and conclusive on the county superintendent. The duty required of the county superintendent by the provisions of section 4431, is, in our opinion, ministerial only, and he may be compelled by mandate to perform it."

In the case referred to, it will be observed that the appellant Young, who was the county superintendent appealing from a judgment in a mandamus proceeding, was, if anything, in a stronger position than are the defendants in the case at bar, for the statute in that case apparently afforded him some pretext at least for the course he pursued. The fact that it was a mandamus proceeding in no sense weakens the case as an authority here because, in such case, if the

court could have found that appellant had any discretion whatever in respect to the enumeration, it must, upon elementary principles, have decided in his favor and ordered a dismissal of the case. See, also, *State* v. *Wedge*, 27 Nev. 61, 72 Pac. 817; *Trustees of School Dist. No. 7* v. *Sherman*, 59 N. J. Law, 375, 35 Atl. 1060. Other cases tending to the same effect are referred to, but it is unnecessary to cite them here.

Defendants, in support of their contention, cite the following cases: *State* v. *Wilder*, 211 Mo. 305, 109 S. W. 574; *Public Schools* v. *Wright*, 176 Mich. 6, 141 N. W. 866; *Louisville School Board* v. *Superintendent of Public Instruction*, 102 Ky. 399, 43 S. W. 718; *Judson* v. *Agan*, 134 Iowa, 557, 111 N. W. 943; 24 R. C. L. 593.

These cases, in most instances, are materially different from the case at bar, in that the officers whose authority is challenged are endowed by statute with discretionary powers not found in the instant case. It is unnecessary to consider them in detail for, in our opinion, they do not answer the contention made by plaintiffs herein.

The court is of the opinion that the board of education of the Salt Lake City school district and its clerk, George King, exceeded their jurisdiction in assuming to revise, change, and alter the enumeration made by the duly appointed enumerators of said district by increasing the same from a population of 28,264 to a population of 33,302, and also exceeded their jurisdiction in transmitting to the superintendent of public instruction a statement to the effect that the school population of said district was 33,302 instead of 28,264, as found by the enumerators.

Compiled Laws 1917, § 4518, provides, inter alia, that the state auditor shall notify the state superintendent of the actual amount of money in the state treasury to the credit of the district school fund on the 31st days of October and December and the 31st day of March of each year. Within ten days after receiving such notification the superintendent shall apportion the funds among the several counties and cities of the first and second classes in the state according to the school population as shown by the last school census lists of the several counties and cities.

It appears from the returns made by the defendants in this case that the December apportionment for the year 1922 has already been made, and the funds were distributed on the basis of the erroneous census to which we have referred, and by means thereof the Salt Lake City board has received an amount greater than it was entitled to in the sum of $49,-912.08.

It has been held by respectable authority that where a mistake of this kind has been made the same may be adjusted in later apportionments so that each district may receive its just proportion of the funds according to its school population. *State* v. *Fay*, 36 La. Ann. 242; *Andrus* v. *Board of Directors*, 108 La. 386, 32 South. 420; *Louisville School Board* v. *McChesney*, 109 Ky. 9, 58 S. W. 427.

In the case last cited the adjustment appears to have been authorized by a statute of the state. We are of opinion, however, that, independent of an express statute, the principle enunciated in the Louisiana cases is just and equitable and furnishes a correct guide in cases of this kind.

In 11 C. J. at page 213, under the title Certiorari, it is said:

"On annulling the proceedings below, the reviewing court may order restitution to a relator who has suffered by the illegal action."

In view of the public interests involved, and the stipulation and request of the parties that the cause be determined upon its merits without regard to the form of the action, we feel authorized to make such order under the facts disclosed by the record as in view of the law determining the rights of the litigants, will give full and adequate relief to the parties entitled thereto.

It is therefore ordered that the clerk of the board of the Salt Lake City school district, on or before the 31st day of March, 1923, make and forward to the state superintendent of public instruction a true statement as to the school population of said district, in accordance with the enumeration made by the enumerators of said district. It is further ordered that the said superintendent make future apportionments in accordance therewith, except that in the apportionment to

Salt Lake City School district the sum of $49,912.08 shall be deducted therefrom and apportioned among the other school districts of the state in proportion to their respective school populations, in accordance with the views herein expressed. Neither party to recover costs.

WEBER, C. J., and GIDEON and CHERRY, JJ., concur.

FRICK, J. (dissenting). It is with some hesitancy, even reluctance, that I enter upon the task of writing a separate opinion in this case. In view, however, that the case is one of more than ordinary importance, in that it involves the construction and application of statutes, questions of procedure and of a jurisdictional nature, I have felt constrained to state my views in my own way.

In view, however, of the many difficulties that arise in this case to which I shall hereinafter refer, I am compelled to go into at least some of the questions more or less in detail.

With these observations in mind, I first proceed to determine the nature of the proceeding and the character and extent of the relief that this court has power to grant in a proceeding of this nature.

This proceeding is based upon our statute (Comp. Laws Utah 1917, § 7377) which, so far as material, provides that in proceedings of this character the writ may be granted by this court—

"when an inferior tribunal, board, or officer *exercising judicial functions* has exceeded the jurisdiction of such tribunal, board, or officer, and there is no appeal, nor, in the judgment of the court * * * any plain, speedy, and adequate remedy." (Italics mine.)

Here we have a clear and unequivocal statement respecting the character of the acts that may be reviewed by this court in a proceeding of this nature.

Our statute, as has repeatedly been held by this court, merely defines certiorari as it was known at common law. Moreover, our statute is taken from the California statute upon the same subject, and the Supreme Court of that state has very frequently held that the certiorari proceeding defined in the California statute is the same as at common law.

In *Central Pac. R. Co.* v. *Placer Co.*, 46 Cal. 670, the Supreme Court of California, in discussing the nature of the proceeding and what may be reviewed, said:

"It has been settled by a long series of decisions in this state that a writ of certiorari brings up for review only the question whether the inferior officer, court, or tribunal, has exceeded its jurisdiction, and cannot be used as a mere writ for the correction of mistakes either in law or fact, committed by the inferior tribunal within the limits of its jurisdiction."

In *Will* v. *Sinkwitz*, 39 Cal. 570, the court said:

"At common law the writ of certiorari determines nothing but the jurisdiction, as the review never extended to the merits. * * * 'Our statute is affirmatory of the common law.' (*People ex rel. Whitney* v. *S. F. F. D.*, 14 Cal. 479.)"

To the same effect are *Buckley* v. *Superior Court*, 96 Cal. 119, 31 Pac. 8, and *Sherer* v. *Superior Court*, 96 Cal. 653, 31 Pac. 565. It is not necessary to refer to more of the numerous decisions of the California court.

It has also frequently been held that only those acts which are judicial in their nature are subject to review under the California statute. In view of the language of our statute, no citation of authority seems necessary on that point.

The office of the writ of certiorari at common law is perhaps as well stated as anywhere in 1 Bailey on Habeas Corpus, Certiorari, etc., in section 171, p. 661. The author there says:

"It is a well-settled principle that the common-law writ of certiorari issues to review only decisions of inferior judicial or quasi judicial tribunals."

The nature of the acts that may be reviewed in a proceeding of this kind is therefore clearly defined, and the court cannot well err in following the provisions of the statute.

The next question is the nature or extent of the review. Referring again to our statutes (Comp. Laws Utah 1917, § 7383) it is there provided:

"The review upon this writ cannot be extended further than to determine whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer."

That section is a verbatim copy of the California statute, which has also frequently been referred to by the California

Supreme Court. In *Will* v. *Sinkwitz*, supra, the court held that the only power the court possessed was either to affirm or to annul the judgment or acts which are the subject of review, and that under the foregoing statute the court cannot grant any other relief except to affirm or annul the acts or proceedings complained of. Our statute, therefore, not only defines the nature of the acts that may be reviewed, but it also fixes the limits or extent of the relief that may be granted by the court issuing the writ of certiorari. In view of these facts it is utterly useless and foreign to the question to be decided to cite the decisions of other courts which are based upon statutes which differ from our own. A mere cursory examination of the statutes of the different states will disclose that while there is a similarity among them they nevertheless frequently differ, in that the powers of the courts with respect to what acts may be reviewed and the extent of the relief that may be granted are in some enlarged while in others they are restricted when compared with the powers that existed at common law. Indeed, in some states the common-law writ of certiorari has been entirely abrogated, while in others the writ of review exists by virtue of constitutional provisions only.

From the foregoing it may safely be asserted that each and every act complained of by the plaintiffs in this proceeding is entirely ministerial in its nature and effect, and hence is not the subject of review under a writ of certiorari. There is certainly nothing in anything that the clerk of the Salt Lake City Board of Education is required to do either under section 4674 or section 4675, both of which are set forth at large in the prevailing opinion and to which I refer, that constitutes either a judicial or a quasi judicial act. Nor is there anything judicial or quasi judicial that the state superintendent of public instruction and the other state officers, who are parties to this proceeding, are required to do under section 4518, in which section the duties of the foregoing officers with respect to making the apportionment of the school funds here in question are defined. The acts complained of being entirely ministerial, therefore, this court, under our statute

which I have quoted, is powerless to grant the relief prayed for in this proceeding.

As I understand 'the purport of the prevailing opinion, however, the relief granted is not based upon the statute, but is based upon the statements of defendants' counsel. In the opinion, after stating that the defendants had interposed a motion to quash the writ of certiorari which had been issued, upon the ground that the acts complained of were not properly subject to review in a certiorari proceeding, the prevailing opinion contains the following statement:

"The defendants, however, at the hearing of the cause, in view of the public interests involved, expressly waived their objection to the form of the action and consented that the case might be determined on its merits."

While I entertain the highest respect for the judgment and ability of my associates, and for their constant and unyielding efforts to arrive at just conclusions, and to grant the relief only which is within the power of this court to grant, yet, in view of the law to which I have hereinbefore referred and the conceded facts and circumstances of this case as the same are made to appear from the record, I confess that the foregoing statement is somewhat confusing to me. No doubt it frequently occurs that a party waives irregularities and other matters not of substance and consents that the court may proceed to determine the issues of substance upon their merits—that is, upon the law applicable to such issues. It may also be that in a court of original jurisdiction the parties to a proceeding may waive the form of the action or proceeding entirely—that is, they may consent that a purely legal proceeding may be converted into an equitable one and vice versa, and, under such circumstances, the court having general original jurisdiction may proceed to determine all the issues, whether of law or fact, and may grant any relief authorized by law and justified by the facts conceded or found. This court has very limited original jurisdiction, albeit its appellate jurisdiction is coextensive with that of our courts of general original jurisdiction. True, this court has original jurisdiction to issue writs of certiorari and the other writs defined in the Constitution, but, as I have pointed out, its

powers with respect to the character or nature of the acts
that may be reviewed, and the extent of the relief that may
be granted in those proceedings, are, nevertheless, limited.
When, therefore, a party who has moved to quash a writ of
certiorari upon the ground that it was improvidently issued
for the reason that the acts complained of are not properly
reviewable in such proceeding, such party does not, and can-
not, confer jurisdiction upon this court to convert the pro-
ceeding into an equitable one or to authorize this court to
grant relief it could not otherwise grant.

In my judgment the effect of waiving a motion to quash
and in consenting that the court may proceed to the merits
merely authorizes the court to dispose of the matter in ac-
cordance with the law applicable to such proceeding.   In
other words, by such a waiver this court is not given the pow-
er to convert purely ministerial acts into judicial ones, but
the court is relieved from passing upon purely technical ques-
tions.   If, therefore, the acts are nevertheless purely ministe-
rial, the court cannot grant relief for the simple reason that
the law has withheld the power to do so.   The court has no
jurisdiction of such acts, and the parties cannot confer it by
consent.

True, a party may concede a certain act to be judicial, and
thus may waive the question of whether it is or not, but juris-
diction cannot be conferred upon this court by consent so
that it may grant relief with respect to acts that are con-
fessedly and beyond all question ministerial, and hence must
be so declared as matter of law.   In view, therefore, of the
indisputable nature of the acts involved in this proceeding, I
am clearly of the opinion that this court exceeded its powers
in granting the relief as it is stated in the prevailing opinion.

If it be assumed, however, that this court had the power
to convert the certiorari proceeding into one for a writ of
mandate, yet the power to do so as attempted by the majority
of the court is, in my judgment, still wanting.   In view that
a mandamus proceeding is entirely different in its nature,
effect, and procedure from one in certiorari, a court can
convert the latter into the former only under peculiar circum-
stances.   As I view it a court cannot convert a certiorari pro-

ceeding into one for a writ of mandate merely because, in the certiorari proceeding, the party has waived all technical matters and has consented that the court may proceed to the merits. No doubt a court may do so when, as in the case of *Hoffman* v. *Lewis,* 31 Utah, 179, 87 Pac. 167, both parties request that the case be considered as one for a writ of mandate and where, as in that case, all the facts are conceded and upon their face disclose that mandate is the only proper remedy, and where, as there, there is but one issue of law. Merrill on Mandamus, § 36; *Ketchum Coal Co.* v. *District Court,* 48 Utah, 342, 159 Pac. 737, 4 A. L. R. 619.

If, however, that question be also waived, still this court, in my judgment, has nevertheless transcended its powers for the following, among other, reasons: A mere cursory reading of sections 4674 and 4675, both of which are set forth at large in the majority opinion, certainly shows that all of the provisions contained therein are in their nature directory; that they necessarily belong to that class of statutes which by all courts are held to be directory merely. The rule with respect to when a statute is directory or otherwise is tersely, clearly and correctly stated in 2 Lewis, Sutherland's Stat. Const. § 618, in the following words:

"Statutes directing the mode of proceeding by public officers are directory, and are not to be regarded as essential to the validity of the proceedings themselves unless so declared in the statutes."

Many illustrations are there given, and the reasons for the rule are fully stated. No other rule is permissible if our governments, either local or general, are to function and prevail.

By what is said is not meant that officers may entirely disregard the provisions of the statute in discharging their ministerial duties, but what is meant is that the mere fact that the precise method of procedure stated in the statute is not followed, such departure is not fatal, and that the action taken by the officers or conclusion reached by them, as the case may be, stands and must be obeyed until it is assailed in a proper proceeding and set aside by a court of competent jurisdiction.

The real purpose of sections 4674 and 4675 is not merely to

take the census of children between the ages of 6 and 18 years in a particular city or district, but the ultimate purpose is to obtain a proper basis for the distribution of certain funds so that all the children of the state may receive their just proportion and may be equally benefited. It is therefore of more importance that the correct or true number of children be ascertained than that the number be ascertained in a particular manner or by a particular method, so long as the spirit and purpose of the statute are carried into effect. The Supreme Court of Kentucky, in the case of *Louisville School Board* v. *Supt. of Public Instruction*, 102 Ky. 397, 43 S. W. 720, in passing upon a statute similar to ours, states the question tersely and correctly in the following words:

"The chief purpose in view was to declare each county entitled annually to a share of the fund in proportion to the number of pupil children living therein. The exact manner of ascertaining the number was not the subject-matter in view."

True, our statute provides for a house to house canvass, and I cheerfully concede that ultimately that method of taking the school census must be held to prevail, where some other method has been followed and the result is properly challenged in a proper proceeding. I most respectfully insist, however, that when the clerk of the school board has certified the number of children as required by the statute his certificate must stand until it is assailed in a proper proceeding and set aside by the court. It appears from the record in this case that pursuant to the provisions of section 4674 the state superintendent prescribed a form of certificate or report which was adopted and followed by the clerk in this case. The certificate forwarded to the state superintendent by the clerk is as follows:

"State of Utah, County of Salt Lake—ss.:

"Geo. King, being duly sworn, says that he is the clerk of the board of education of Salt Lake City school district, and that the foregoing report, showing the number of school age residing in said district to be 16577 boys and 16725 girls, is true and correct.
                                        "[Signed] Geo. King, Clerk.

"Subscribed and sworn to before me this 26th day of December, 1922.
                              "[Signed] Kathryn B. Scribner,
"[Seal.]                                    Notary Public."

Certiorari

It is, however, disclosed by the record certified to this court that in examining the lists of the enumerators that were appointed to take the school census it was discovered that those lists not only fell far short of the number of children residing in Salt Lake City district the preceding year, but that a large number of children that were in actual attendance in the Salt Lake City schools were entirely omitted from those lists. As I read and understand the majority opinion it is stated that if, upon discovering the discrepancy just referred to, the board of education of Salt Lake City and its clerk had directed the census enumerators to make a recanvass and to supply and correct the omissions, it would have been lawful to do so; at least that that method would not have vitiated the result obtained in that way. In that conclusion I unhesitatingly concur, and it is to be regretted that the omissions from the lists were not corrected in that way. In this case, however, the record also discloses that, in view of the very gross discrepancies in the lists of the enumerators, the board of education and the clerk took the matter up with the state superintendent, who in turn counseled with the Attorney General of the state, and after a full consideration of the matter the additions and corrections were made by taking into account all of the children enrolled and attending the public schools of Salt Lake City, and the clerk in a supplementary certificate certified that the corrected enumerations contained no children that were not actually residents of Salt Lake City between October 15 and 31, 1922. That statement is not disputed by the plaintiffs except in this way: They insist that they do not know whether it is correct or otherwise and that the only means they have of determining the true number of children in Salt Lake City is by reference to the enumerators' lists in which the number that was actually returned is given as 28,264, while in the corrected list the number is stated to be 33,302, which latter number was certified to the state superintendent.

In this connection I feel impelled to state here that the record in this case shows beyond a shadow of a doubt (1) that the board of education of Salt Lake City did depart from the statutory method in determining the number of children be-

tween the ages of 6 and 18 years who actually reside in Salt Lake City, but ascertained that number by pursuing the method hereinbefore stated; (2) that in doing that the board and its clerk acted in the utmost good faith, and they all believed that they were simply complying with the object and purpose of the statute in ascertaining the actual number of children of school age who reside in said city; (3) that it is possible that the actual number of children of school age may have been less than the number certified to by the clerk; and (4) that it is beyond any dispute whatever that the number of children of school age shown by enumerators' lists falls far short of the actual number of children of that age who resided in Salt Lake between the 15th and 31st days of October, 1922. In view, however, that these facts did not appear on the face of the certificate of the clerk which was forwarded to the state superintendent and upon which he made the apportionment, he was not only justified in making, but he was required to make, the apportionment in accordance with the certificate and could have been compelled to do so. That is precisely what is held in all the cases referred to in the majority opinion. In those cases the official for whose guidance the certificates there in question were made refused to follow them but insisted that the certificates were not true in certain particulars, among other things that the number of children certified was in excess of the actual number in the district or city, and hence he refused to make the report required by the statute. A writ of mandate requiring him to report to the state superintendent in accordance with the certificate of school trustees was issued, and it was held that the county superintendent had no power to go behind the certificate of the trustees, but must comply therewith. Here, in this case, however the certificate is held to have been no protection to the state superintendent. The opinion just referred to is relied on by my associates as being decisive of the question at issue in this case. I most respectfully submit that the decision in that case not only does not support the conclusions of my associates, but is in direct conflict therewith for this reason: In this case the apportionment that was made by the state superintendent is held to be illegal,

although under the decision of the Indiana Supreme Court, which is relied on and quoted from, it is held that the officer to whom the certificate is made must obey it. And that is the gist of all the decisions in the cases that are cited.

Then again, as I have already pointed out, the acts of the state superintendent and of all the state officers who are made defendants, including the acts of the clerk in making the certificate, are all ministerial and nonjudicial, and hence cannot be reviewed in a certiorari proceeding.

It is, however, stated in the opinion that no distinction is perceived between the mandamus and a certiorari proceeding. That statement, in my judgment, is made inadvertently on the part of the writer of the majority opinion. A mandamus proceeding is vastly different from a certiorari proceeding in that the scope of the inquiry in the former proceeding is much greater than in the latter. In a mandamus proceeding various defenses may be set up in the answer or return of the defendant, and under our statute he may be entitled to a jury trial in case there is dispute respecting the facts. Then again, the defendant may plead any legal excuse that he may have why he should not be required to act as demanded, even to the extent of pleading extraneous facts. The officer "may move to quash the writ, or may demur to it, or make a return denying the facts stated therein, or set up new matter constituting a defense." Merrill on Mandamus, § 267. He may also set up several defenses if not inconsistent. Id. § 277. In a certiorari proceeding, however, nothing can be certified or examined into except the record of the proceeding, and no extraneous matter or excuse is permitted. This shows how extremely unjust and unfair it may be to an officer executing the law to attempt to convert a certiorari proceeding into one of mandate.

If it be assumed, however, that this court is authorized to convert the certiorari proceeding into one of mandamus, yet I must respectfully submit that the judgment of this court is, nevertheless, unauthorized, for the reason that if this proceeding shall now be treated as one in mandamus, then the court was powerless to undo what had been done. The writ of mandate is to compel action, not to undo what has been

done. That is elementary doctrine. The certificate emanating from the board of education could, therefore, not be annulled in a mandamus proceeding. It could, however, be annulled if it were a judicial or quasi judicial act in a certiorari proceeding. In order, therefore, to annul the certificate, this court must have proceeded upon the theory that this is a proceeding in certiorari, albeit the act annulled is merely a ministerial act. In so far, therefore, as the judgment grants relief beyond the mere annulment of the clerk's certificate, it, for the reasons hereinbefore stated, transcends the powers of this court in a certiorari proceeding, and hence cannot be justified upon that ground.

Let me again concede that this court may convert one special proceeding into another special proceeding in order to accomplish its purpose, yet I again humbly protest that the judgment outlined in the majority opinion as it now stands falls far short of reflecting justice in the premises. As I have pointed out, the real object or purpose of the statute is to obtain a proper and correct basis for the apportionment of the public school funds for the benefit of all the children of school age in the state. I think I have also shown, beyond a reasonable doubt, if not demonstrated to an absolute certainty, that there are many more children of school age in Salt Lake City than the number that was returned in the lists of the census enumerators. From the record certified to this court in this case it is quite as certain that the number of children of school age is in excess of the number that was returned by the enumerators as it is that the board of education and its clerk departed from the precise method prescribed in the statute for ascertaining the number of children of school age. Notwithstanding that, the error of the board of education and its clerk is condemned while the equally patent error of the enumerators, and one that is a far more prejudicial error, is upheld, and no opportunity is afforded to the defendants to correct the error.

In this connection let me again state that I have not the slightest inclination to criticize my associates for attempting to adjust the whole matter in one proceeding. All that I insist upon is that if that be done it be done in a way so as to

reflect justice to all concerned and so as to effectuate the real purpose of the apportionment statute. What I protest against is that in this case this court has adopted the rule of the modern philanthropist who, wittingly or unwittingly, takes or withholds from one to give to another, although the recipient is no more entitled to the gift than is the victim from whom it was taken. In short, what I contend for is this, that, inasmuch as this court has undertaken the task of disposing of the controversy between plaintiffs and the defendants, it should have taken such action as would result in complete justice to all concerned. The children of Salt Lake City should not suffer, nor should the city's taxpayers be penalized merely because a mistake has been made in the precise method of ascertaining the exact number of children of school age residing within the city.

If this court, therefore, has come to the conclusion that by reason of the error of the defendants it had the power to annul what are confessedly purely ministerial acts in this proceeding, and if it has arrived at the further conclusion that it can grant different kinds of relief in this proceeding, then again I respectfully submit that the court should have entered a judgment which would result in complete justice as nearly as that can be done. As I view it, that could easily have been accomplished by merely annulling the clerk's certificate, and after doing so requiring the board of education of Salt Lake City to correct the incomplete and incorrect enumerators' lists by requiring the enumerators to complete the house to house canvass and to add to their lists all the children of school age residing in Salt Lake City between the 15th and 31st days of October, 1922.

I further protest because what is required of the Salt Lake City board of education, and especially from the clerk of that board, is under the undisputed facts, an impossibility. What the statute provides is that the clerk "shall make out and forward to the state superintendent a statement showing the number of children of school age residing in the district," etc. The judgment of this court, however, requires him to make a "true statement of the school population of said district in accordance with the enumeration made by the enu-

merators of said district." Now, as I have shown, nothing is more clearly demonstrated by the record certified to this court than that the enumerators did not list all of the children of school age residing in Salt Lake City between October 15 and 31, 1922. How, then, is it possible for the clerk to make a true statement respecting the number of children if he is required to do that "in accordance with the enumeration made by the enumerators"? Such a statement would manifestly be untrue. That is why the certificate could not be made in accordance with the enumeration made by the enumerators in the first instance. The clerk has personal and positive knowledge of such untruthfulness, and yet he is required to certify to what is manifestly untrue. Moreover, the state superintendent has required the clerk's statement to be made under oath. I cannot understand how the clerk can make a truthful statement and make oath thereto if he is required to make the statement from lists that are confessedly incorrect and incomplete, and thus do not reflect the truth. If, then, the clerk complies with the judgment of this court he must certify to that which he knows to be false, while if he fails to do so he is punishable for contempt.

While I am powerless to aid him in that regard, I may, nevertheless, be permitted to point out the dilemma that he is forced into. All this may be avoided by following the course I have hereinbefore suggested.

Nor is there any valid reason why such a course should not be followed. Certainly, if this court has the power to correct one error it must be equally potent to correct another relating to the same subject-matter.

In *State* v. *Wedge*, 27 Nev. 61, 72 Pac. 817, a question similar to the one raised in this case was before the court. That was a mandamus proceeding requiring the county superintendent to certify or report in accordance with the report of the school trustees of a certain district respecting the number of school children within the district. The county superintendent refused to do so, and in answer to the writ of mandate set up certain defenses, among which was that the true number of children had not been reported by the trustees. While the court held his answer as framed insufficient on

demurrer, yet it did not foreclose the case by refusing the county superintendent the right to correct the error, if one in fact existed, in making the enumeration. In the course of the opinion the court said:

"But if respondent [the county superintendent] should desire to file amended and supplemental answer, and to supply the deficiencies in the insufficient answer by alleging a new school census marshal's report, showing the number of census children in De Lamar district on the 1st day of May, 1902, *provided respondent in the meantime sees proper to have such new report made,* and also any other matter respondent may desire to set up in answer or in supplemental answer to relators' petition," etc. (Italics mine.)

It may, however, be argued that too long a time has elapsed since the making of the enumerators' lists to permit a new census report to be made by them. That contention, to my mind, is wholly without merit. The Nevada decision just referred to was rendered on June 19, 1903, while the new report referred to in the opinion was to be made as of May 1, 1902, or more than a year prior to the time the decision was rendered. As already pointed out, however, the statute respecting time is merely directory and there is no legal or any other valid reason why the errors of the enumerators should not be corrected and their lists made to speak the truth, as nearly as that may be done under the circumstances.

If the defendants had acted fraudulently, or had prevented an earlier correction, there might be some justification in depriving them of the right to make the correction so far as they are personally concerned, but there still would be no justification in doing that so far as the school children's rights are concerned. The defendants could, however, not have made the correction until their report and actions were assailed by the plaintiffs. That has been done only very recently. The correction by the enumerators may, however, be made within a comparatively short time, and the apportionment may thus be made in accordance with the truth, and every child in the state of Utah will then receive the proportion of the public funds intended for its benefit, and no one will or can be injured.

In conclusion I desire to state that, owing to the demands

that are made upon me in discharging my duties, I have not been able to condense what I have said as under different circumstances I might have done. I also desire to state that I have gone into the matters hereinbefore referred to at some length for the sole purpose of demonstrating the difficulties that courts meet in attempting to reflect justice by departing from known and established rules of procedure.

In my judgment, for the reasons hereinbefore stated, the judgment of the majority in this case should not be permitted to prevail, but it should be modified so as to permit the errors to be corrected and the apportionment made in accordance with the true number of children of school age residing in the Salt Lake City school district between the ages and the times hereinbefore stated, and when that is done the apportionment for the entire year should be adjusted to conform to the actual facts.

## On Application for Rehearing.

THURMAN, J. The majority of the court are of opinion that the application for a rehearing and to modify the order of the court should be denied.

The long delay in passing upon the application is mainly due to the protracted illness of Mr. Justice FRICK, who dissented from the views of the majority.

Owing to the fact that it was considered an emergency case involving the interests of the public schools, the majority opinion was handed down before the dissenting opinion was prepared and filed; otherwise some of the questions discussed in the dissenting opinion would probably have been reviewed in the majority opinion. The same questions are urged in defendants' brief on the application for a rehearing. It is not deemed necessary at this time to discuss the questions presented except to suggest that the only question of fundamental importance is, Did the court have jurisdiction to make and enter the order of which defendants complain? As to that the majority have no reasonable doubt. The grievance complained of in the complaint was plainly stated. The complaint, among other things, prayed

Certiorari

for general relief. As stated in the opinion, the parties stipulated that the cause might be determined on its merits without regard to the technical form of the action. The case was reviewed and a mandatory order made which in the opinion of the court afforded adequate relief, and was clearly within the constitutional power of the court.

But it is insisted in the petition for rehearing for the first time, that the order should be so modified as to permit the taking of a new census in the manner required by the majority opinion and that the same be certified to the state superintendent of public instruction and a new apportionment be made in accordance therewith. If such suggestion had been made in the answer of defendants, or even at the oral argument of the case, it is probable it might at that time have been considered possible of accomplishment in a manner reasonably satisfactory, but such suggestion was not made in any manner or at all until after the majority opinion was filed and unofficially published. The question arises, Is it now feasible or practicable to take a census of the school population of Salt Lake City as it existed between the 15th and 31st days of October, 1922? It is a matter of common knowledge that the population of Salt Lake City, in some respects at least, **5, 6** is continually fluctuating and changing. The census enumerators are required to visit each house in the wards and enter upon their lists the name of each person residing therein between the dates mentioned who shall have reached the age of 6 years and have not reached the age of 18. Besides this, other information is required to be obtained and noted by the enumerators, rendering the business still more difficult and complicated unless it is seasonably done and performed.

In view of these conditions the majority of the court incline to the view that any attempt at this time to take the school census of Salt Lake City as it existed between October 15 and 31, 1922, would be but little better than a rough guess, and would in no sense be such a census as is contemplated by the statute. Besides this, to make the modification requested would be to invite a lax and loose administration of a plain, unambiguous statute and establish a precedent

which in the long run would more than likely prove detrimental to the welfare of the public schools.

We are not unmindful of the fact that in *State* v. *Wedge*, 27 Nev. 61, 72 Pac. 817, cited in both the majority and dissenting opinions upon different points, the court permitted the respondent, if he so desired, to take a new census of the school population more than a year after the time fixed by law, but whether respondent so desired, or made the attempt, and, if so, whether it was satisfactorily accomplished, is not made to appear. The opinion of the court upon that point is not even persuasive, much less controlling.

The application for rehearing and for modification of the order as prayed for is denied, but the time within which the clerk of the board of the Salt Lake City school district must report the census to the state superintendent of public instruction is hereby extended to and including October 15, 1923. Neither party to recover costs.

WEBER, C. J., and GIDEON and CHERRY, JJ., concur.

FRICK, J. I still feel constrained to dissent from the views of the majority, and especially from the reasons urged by them for refusing a modification of the original judgment.

I regret exceedingly that my illness has caused the "long delay" referred to in disposing of this matter, and if my illness has in any way deprived the school children of Salt Lake City from having the opportunity of showing their right to obtain the full proportion of the trust fund guaranteed by the Enabling Act and the Constitution of this state I regret it all the more.

Without now taking either the time or space to state my reasons at length for my conclusions, I desire, however, to most respectfully suggest that, in view of the fact that it is apparent from the record that the school children of Salt Lake City did not obtain their full proportion of the trust fund created for their benefit, I am clearly of the opinion that the reasons advanced by the majority for denying the modification of the original judgment are insufficient. The modification should therefore be granted.